[No. 3547.    Decided    January 11, 1901.]

MARBLE SAVINGS BANK, *Respondent,* v. W. R. WILLIAMS *et al.,* BOARD OF COUNTY COMMISSIONERS OF PACIFIC COUNTY, *et al., Appellants.*

RES JUDICATA—ADMISSIBILITY OF EVIDENCE TO SHOW WHAT CONCLUDED BY FORMER JUDGMENT.

Where a judgment in a former action is pleaded as an estoppel in a subsequent action between the same parties involving the same subject matter, and the record does not disclose upon which of several issues the case was litigated and decided, extrinsic evidence is admissible for the purpose of establishing that the former action was determined upon an issue which is not involved in the subsequent action.

Appeal from Superior Court, Pacific County.—Hon. HENRY S. ELLIOTT, Judge. Affirmed.

*Welsh & Thorp,* for appellants.

*Hewen & Stratton* and *Cotton, Teal & Minor,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—In August, 1892, School District No. 4 of Pacific county, in consideration of the sum of $5,137.50, paid to it by Farson, Leach & Co., issued to said company its negotiable bonds in the sum of $5,000, payable twenty years after August 1, 1892, bearing interest at the rate of seven per cent. per annum, payable semi-annually. Interest installments were evidenced by interest coupons attached to each bond. Said bonds were issued for the purpose of purchasing a school house site and erecting and furnishing a school house for said district. The respondent herein, on or about December 8, 1892, purchased the bonds so issued of C. H. White & Co., who had become the owners of the same. It is conceded that none of the interest sued for in this action has been paid. In October, 1898, C. H. White & Co., on behalf of respondent, filed a petition praying for a writ of mandate to require the defendants (appellants) to levy a bond interest tax on the property situated in School District No. 4 sufficient to pay the interest then accrued on said bonds, amounting to $1,050. To this petition the school district filed an answer containing three separate affirmative defenses—one alleging that the school district was in debt over and above the constitutional limitation at the time the bonds were issued; one alleging that the bonds were sold at private sale, without notice; also fraud and conspiracy in the bidding and issuance of the bonds, and that the plaintiff was a party to the fraud; and the third that at the time the bonds and coupons were issued the school district comprised a large portion of land, which had since been cut off therefrom and comprised and was a

part of other school districts. To these defenses the plaintiff interposed a demurrer, which was overruled, and, the plaintiff electing not to plead further, judgment of dismissal was taken in favor of the defendants. Subsequently this action was brought by the respondent against the same defendants for the recovery of the interest due upon the coupons of the aforesaid bonds, and the judgment in the former action was pleaded as an estoppel to the action now pending. Upon the trial of the cause, over the appellant's objection, testimony was introduced tending to show that the court, in dismissing the action of C. H. White & Co., did not rule, adjudge, or decide any question involving the validity of the bonds or interest coupons, and did not adjudicate any of the issues joined in the present action, but dismissed said suit of C. H. White & Co. and rendered judgment therein on the sole ground that the moneys then in the hands of the county treasurer were not applicable to the payment of the interest coupons; and the finding of the court in the present case is to that effect. The reply of the respondent alleged that the district appeared and answered the complaint in the first action, to the effect that none of the moneys then in the possession of the county treasurer were applicable to the payment of the coupons sued on, and that the court sustained this plea of the defendants in that suit, and rendered the judgment pleaded on that defense alone; but did not rule, adjudge, or decide any of the other defenses pleaded by the defendants, did not rule, adjudge, or decide on the validity of said bonds or interest coupons, and did not adjudicate any of the issues joined in the present action. Upon the trial of the cause judgment was rendered in favor of the respondent for the amount demanded.

There are but two questions presented by the record in

this case:   (1) Has the respondent, a foreign corporation, a right to sue in the courts of Washington without appointing any agent in the state or filing the appointment of such agent in the office of the secretary of state? (2) Is respondent estopped by the judgment rendered in the case of C. H. White & Co.?  We will not take time to discuss the first proposition, for it has been twice decided by this court against respondent's contention; first in *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67 (31 Pac. 327), and then in *La France Fire Engine Co. v. Town of Mt. Vernon,* 9 Wash. 142 (37 Pac. 287, 43 Am. St. Rep. 827), which approved the former case.

The second proposition is of broader import, as the decisions upon the question of *res adjudicata* are numerous and somewhat bewildering.   Certain propositions are advanced by the appellants which it is claimed the authorities sustain, viz.:

"While parol evidence may be received to show what was litigated upon the trial, it must be consistent with the record, and cannot be admitted to explain or contradict it."

"Where the defendant pleads *res adjudicata,* parol evidence is not admissible to contradict the record, and substitute the opinion of witnesses as to the meaning and effect of the pleadings and judgment in the former case."

"It cannot be shown by parol evidence, in opposition to the record, that a question which appears by it to have been settled was not in fact litigated."

"Where it appears by the record that a particular issue was determined, all questions of fact are excluded, and the court must, as a matter of law, declare such determination to exist and to be conclusive."

"A judgment bars not only every defense raised, but every defense that might have been raised."

49—23 WASH.

We are not certain but that the soundness of all these propositions, with the exception of the last, might be conceded without as a consequence working a reversal of this case. As to the last proposition, it is rather a loose expression of the law, which has frequently been used and has been stated as a general proposition by this court in the cases cited by appellants. The essential thing to determine is, whether or not the question involved in the second suit was actually litigated in the first. The doctrine of *res adjudicata* is based upon this proposition. It is true that, for the purpose of preserving the verity of judgments and making stable and enduring the judgments of courts, the law employs certain presumptions in favor of the judgment, but these presumptions must not interfere with investigations which elicit the truth. Consequently, if it does not conclusively appear from the record that the matter in dispute was adjudicated, evidence will be admitted to ascertain that fact. All the authorities hold that an estoppel will not be pronounced when it affirmatively appears from the whole record that the point in controversy was not actually adjudicated, even where it might have been adjudicated under the pleadings; that is to say, that presumptions will not balance or outweigh the affirmative showing of the record—as when, for instance, an opinion has been filed which indicates upon what particular point the judgment was granted, where, under the pleadings, it might have been granted on one or more points raised by the pleadings. If in this case the judge had rendered an opinion stating that the demurrer was overruled because it appeared that the funds sought could not be made responsive to the judgment asked, and that it was, therefore, not necessary to enter into an investigation of the other defenses, it would be

plain, under all authority, that estoppel could not be successfully invoked.   Not having done that, the judge in this case, who was the same judge who tried the former case, heard testimony to the effect that the judgment which he announced in the former trial comprehended only the question of the applicability of the funds.   It would seem that there could be no great difference in principle.   It is true, the lapse of time and the interest of witnesses might establish the fact with a little less certainty.   Still, we think less harm will be done by adopting such rule than by adopting the harsh rule that all questions which could have been litigated under the pleadings must be conclusively presumed to have been litigated.   It is not the policy of the law to take snap judgment on litigants, and it seems to us that great injustice might be done by precluding an investigation of the point actually adjudicated when the judgment is consistent with an adjudication of one or all of the matters in issue. ·

In *Smith v. Auld,* 31 Kan. 262 (1 Pac. 626), in an opinion rendered by Justice BREWER of the supreme court of the United States, who was then a member of the supreme court of Kansas, it is said:

"The whole philosophy of the doctrine of *res adjudicata* is summed up in the simple statement that a matter once decided is finally decided; and all the learning that has been bestowed, and all the rules that have been laid down, have been for the purpose of enforcing that one proposition.   One rule fully established is, that you may examine the entire record of the prior action in order to determine what was in fact adjudicated.   The inquiry is not limited to the mere formal judgment.   It extends to the pleadings, the verdict, or the findings, and the scope and meaning of the judgment is often interpreted by the pleadings, verdict, or findings.   Indeed, to determine the matters which were adjudicated, not only may you look to

the entire record, but also, in many instances, you may resort to parol testimony."

In *Cromwell v. County of Sac,* 94 U. S. 351—a case which has been frequently cited on both sides of this controversy—an extract from the opinion in the case of *Washington, etc., Steam Packet Co. v. Sickles,* reported in 24 How. 333, is approvingly quoted, and is as follows:

"The record produced by the plaintiffs showed that the first suit was brought apparently upon the same contract as the second, and that the existence and validity of that contract might have been litigated. But the verdict might have been rendered upon the entire declaration, and without special reference to the first count. It was competent to the defendants to show the state of facts that existed at the trial, with a view to ascertain what was the matter decided upon by the verdict of the jury."

So, in this case, the judgment of dismissal might have been rendered upon the question of the inapplicability of the funds; for, if it was found that the funds were inapplicable, mandamus would necessarily fail, and it would not have been necessary for the court to have gone into an investigation of the other questions raised in the pleadings. It seems, then, not to be inconsistent with any equitable rule to allow the court to determine by investigation the particular matter litigated, to the end that matters which had been litigated could not be again adjudicated, but that those questions which had not been adjudicated might be adjudicated for the first time. There is also approvingly quoted therein the case of *Howlett v. Tarte,* 10 C. B. (N. S.) 813, which was an action for rent under a building agreement. The defendant pleaded a subsequent agreement changing the tenancy into one from year to year, and its determination by notice to quit before the time for which the rent sued for was alleged to have accrued. The plaintiff replied that he had recovered

a judgment in a former action against the defendant for rent under the same agreement, which had accrued after the alleged determination of the tenancy; in which action the defendant did not set up the defense pleaded in the second action. On demurrer the replication, after full argument, was held bad. In deciding the case Mr. Justice WILLES said:

"It is quite right that a defendant should be estopped from setting up in the same action a defense which he might have pleaded but has chosen to let the proper time go by. But nobody ever heard of a defendant being precluded from setting up a defense in a second action because he did not avail himself of the opportunity of setting it up in the first action. * * * I think we should do wrong to favor the introduction of this new device into the law."

Mr. Justice BILES said:

"It is plain that there is no authority for saying the defendant is precluded from setting up this defense."

Mr. Justice KEATING said:

"This is an attempt on the part of the plaintiff to extend the doctrine of estoppel far beyond what any of the authorities warrant."

In *Cromwell v. County of Sac, supra,* a distinction is made between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action; and it is stated that in the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. But this is no more than an announcement of the rule that in such case that which was adjudicated upon the merits of the action could not be again adjudicated; and while it is true that, in

accordance with cases cited by appellants and many others, a judgment upon the pleadings is said by the courts to be a judgment upon the merits, it is not true with reference to the announcement made in *Cromwell v. County of Sac, supra.*

In *Russell v. Place,* 94 U. S. 606, in an action at law for damages for the infringement of a patent for an alleged new and useful improvement in the preparation of leather—which patent contained two claims, one for the use of fat liquor generally in the treatment of leather, and the other for a process of treating bark-tanned lamb or sheep skin, by means of a compound and applied in a particular manner—the declaration alleged, as the infringement complained of, that the defendants had made and used the invention, and caused others to make and use it, without averring whether such infringement consisted in the simple use of fat liquor in the treatment of leather, or in the use of the process specified. Held, that the judgment rendered in the action did not estop the defendant in a suit in equity by the same plaintiff for an injunction and an accounting for gains and profits from contesting the validity of the patent, it not appearing by the record, and not being shown by extrinsic evidence, upon which claim the recovery was had. It was said that the validity of the patent was not necessarily involved, except with respect to the claim which was the basis of the recovery; that the patent might be valid as to a single claim, and invalid as to the others; and that if, upon the face of a record, anything is left to conjecture as to what was necessarily involved and decided, there was no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence. Said the court in that case:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly

involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

The doctrine of this case, if followed, must be conclusive of the case at bar. The very example given there is furnished by the case at bar, viz., that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which one of them was litigated and upon which the judgment was rendered. It will also be observed that the court there places the burden of proof upon the party invoking the estoppel to show that in such case, where there are several defenses, upon either of which the judgment might properly have been based, the judgment was actually based upon the proposition which is pleaded in bar. The court there cited an expression of Coke, to the effect that an estoppel must be certain to every intent, and added: "And if upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence;" citing *Aiken v. Peck,* 22 Vt. 260, and *Hooker v. Hubbard,* 102 Mass. 245.

A very instructive case is that of *Fahey v. Esterley Machine Co.*, 44 Am. St. Rep. 554 (55 N. W. 580), where it was held that when the record does not settle the question, oral evidence is admissible to show what was in fact decided; and that, if a judgment may have been based upon either of two or more issues presented in the pleadings, it is not conclusive upon either unless evidence is received to show which issue was in fact determined as the ground of the former adjudication; that uncertainty as to what was in fact decided is fatal to the use of a judgment as an estoppel. It would be useless to make excerpts from the opinion in this case, but it is decisive of the question at issue, and Mr. Freeman, in his note to the case, has collected the authorities and discussed them with his usual force and clearness, showing that the great weight of authority is to the effect that evidence may be introduced to make certain that which is uncertain as bearing upon the question of what was adjudicated in the former action. It is true that there are cases holding to the stricter rule announced in the expression that the general doctrine is that the plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time; but neither in those cases nor in the case cited from this court, where that doctrine seemed to have been approvingly quoted, was there an attempt, as in this case, on the part of the party resisting the plea, to show by extraneous testimony that the matter pleaded in estoppel had not actually been adjudicated in the former trial; and in our investigation of this case,—

and it has embraced an examination of all the cases that were available to us, those cited by the appellants and respondent, as well as many others,—we have been unable to find a case which holds that, where the judgment which is pleaded as a bar could have been rendered upon one of many defenses or affirmative allegations, the party would not be allowed to introduce testimony showing the truth and establishing the fact as to what had actually been litigated in the former proceeding.

The judgment will be affirmed.

ANDERS, FULLERTON and REAVIS, JJ., concur.